1814.

BOGART
v.
PERRY.

June 15th.

## BOGART *against* PERRY AND OTHERS.

The 4th section of the statute of *Uses*, (sess. 10. ch. 37. 1 *N. R. L.* 72.,) rendering lands liable to execution against the *cestuy que use*, or *cestuy que trust*, applies only to those fraudulent and covenous trusts, in which the *cestuy que use, or trust*, has the whole real beneficial interest in the land, and the trustee the mere naked and formal legal title.

A judgment, at law, is not a *lien* on a mere equitable interest in land; and the execution, under it, will not pass an interest which a court of law cannot protect and enforce.

A. being seized of land, agreed to sell and convey the same to B., for a certain sum, part of which was to be paid down, and the residue in three annual instalments; and A. was to execute a deed to B., on his paying the second instalment, and securing the residue by mortgage. B. paid the part down, and entered into possession, but neglected to pay the instalments; and more than two years after they had become due, and payable, B. assigned the contract to S., who took possession of the land, and made valuable improvements thereon; and S., without performing the contract with A., assigned it, and all his interest, to P., with knowledge, however, of a judgment existing against S., before such assignment. It was held, that the mere right, in equity, of S., as assignee of B., against A., on the contract for the sale of the land, was not the subject of *lien*, or judgment and execution.

*JOHN ATKINSON*, being seized in fee of lot No. 98, in *Junius*, on the 4th of *June*, 1804, by a written contract, agreed to sell to *Lewis Birdsall*, parts of the lot, or 296 acres, at 4 dollars per acre; 400 dollars of the purchase money to be paid down, and the residue in three annual payments; and a deed to be executed and delivered, on payment of the second instalment, with a mortgage for the residue of the purchase money. *Birdsall* paid down the 400 dollars, and, on the 20th of *September*, 1804, paid *Atkinson* the further sum of 172 dollars. *Birdsall* went into immediate possession of the land, under the contract; and, soon after contracted to sell 200 acres to *Asa Smith*, (one of the defendants,) who agreed to pay the balance due on the contract to *Atkinson*, and took possession of the land

so purchased, and erected a dwelling house thereon, and made large and valuable improvements. *Richard Harison* recovered a judgment against *Smith*, in the supreme court, for 450 dollars, of debt, which was docketed the 19th of October, 1808. In *April*, *May*, or *June*, 1809, *Smith* contracted to sell the 200 acres to *Perry*, for above 2,000 dollars, who agreed to pay off the balance due to *Atkinson*, and to pay the residue to *Smith*, when the judgment of *Harison*, and any other judgments binding the premises, were paid off; and gave his note payable accordingly.

The bill charged, that *Perry*, when he purchased of *Smith*, had full knowledge of *Harison's* judgment. Soon after this purchase, and before the 28th of *May*, 1809, *Birdsall* sold to *Perry* his contract with *Atkinson*, and *Perry* immediately surrendered it up to *Atkinson*, paid him 1,050 dollars, the balance due, and took a conveyance, in fee, from *Atkinson*, for the 296 acres; the legal title having remained in *Atkinson* until the time of this conveyance.

On the 25th of *October*, 1808, a *test. fi. fa.* was issued, on the judgment of *Harison*, against the property of *Smith*, by virtue of which, *Birdsall*, who was then sheriff of the county of *Seneca*, sold the 200 acres at public auction, to the plaintiff, *Bogart*, who was the highest bidder, and executed a deed to him, under the judgment and execution, dated *August* 1, 1809. On the 18th of *September*, 1809, the plaintiff tendered to *Perry* 1,063 dollars and 40 cents, in full of the money paid to *Atkinson*, and demanded a deed.

On the 9th of *May*, 1811, *Perry* sold to *John Van Tuyl*, (one of the defendants,) the whole 300 acres for 5,000 dollars, who paid down 1,000 dollars, the residue being payable in future instalments. The bill alleged, that *Van Tuyl* purchased with full knowledge of all the preceding facts. On the 26th of *July*, 1811, the plaintiff tendered to *Van Tuyl* 1,215 dollars, and demanded a deed for the 200 acres, which was refused.

The bill was taken, *pro confesso*, against *Smith*.

*Van Tuyl*, in his answer, denied all knowledge of the facts charged in the plaintiff's bill.

*Perry*, in his answer, admitted most of the facts stated in the bill. He admitted that *Smith*, on or about the 1st of *April*, 1809, sold to him the 200 acres, &c. and that he agreed to pay the balance to *Atkinson*; that he paid 65 dollars down to *Smith*, and, afterwards, on the 24th of *May*, gave *Smith* his note, but he denied that it was intended to provide against *Harison's* judgment. That soon after he purchased of *Smith*, he purchased the contract of *Birdsall*, and gave it up to *Atkinson*, though, when he purchased of *Smith* and *Birdsall*, the contract with *Atkinson* had become forfeited for non-payment. The contract was surrendered to *Atkinson*, the 28th of *May*, 1809, and in *July* following, he received a deed, and paid the balance due to *A.* He admitted the sale on *fi. fa.* the 1st of *August*, 1809, to the plaintiff, for 30 dollars, and the tender made to him the 18th of *September* following; but he denied any knowledge of *Harison's* judgment, until after he made his contract with *Smith*, and had entered into possession of the 200 acres, and had paid *Smith* 65 dollars.

*Birdsall* deposed, that in 1808 and 1809, he was sheriff of the county, and had frequent conversations, when sheriff, with *Perry*, respecting the *fi. fa.*, in favour of *Harison*, against *Smith*. That such conversation was "a considerable time previous to the purchase, made by *Perry*, of the 200 acres of *Smith*, and that *Perry* often conversed with him, before the purchase, as to the propriety of making it."

Another witness stated, that he heard *Perry* say, in the early part of *May*, 1809, after he had taken possession of the land, that there were judgments against *Smith*, which he was afraid would give trouble. The note given by *Perry* to *Smith*, which was exhibited, dated the 24th of *May*, 1809, was for 885 dollars, to be paid "when all judgments

against said lot, No. 98, in *Junius*, are settled, respecting the said 200 acres," &c.

*E. Williams*, for the plaintiff.

*Henry*, contra.

THE CHANCELLOR. If a question of notice was material in this case, I should have no hesitation in deciding that *Perry*, when he took an assignment of *Smith's* interest, was chargeable, not only with constructive notice of *Harison's* judgment, by means of the docket of the judgment, but with notice in fact. It does not appear to me, however, that *Perry* is to be affected by the notice, because *Smith* had no interest in the land on which the judgment could attach, or the execution operate. When *Perry* purchased, neither *Birdsall*, nor his assignee, had performed the contract with *Atkinson*. There had been not only a default in paying the instalments, but nearly two years had elapsed after the last instalment had been due ; no reason appears in the case for this gross default ; and if *Atkinson* had insisted on the failure, it is not certain that *Birdsall*, or his assignee, would have been entitled to a specific performance of the contract. But the mere right in equity, that *Smith*, as assignee of *Birdsall*, might have had against *Atkinson*, under the contract, was not the subject of the judgment and execution, as " real estate." No case has gone that length, and though an equity of redemption has been held liable to a sale on a *fi. fa.*, (*Waters* v. *Stewart*, 1 *Caines' Cases in Error*, 47.,) yet that was in a case in which the mortgagor was still in possession, and before any foreclosure of the mortgage, and on grounds peculiar to the case of a mortgage, in which the mortgagor is regarded, at law, as well as in equity, as the real owner of the land. It is on the same principle, that the interest of the mortgagee, before possession taken on foreclosure, is not subject to sale on execution. (*Jackson* v. *Willard*, 4 *Johns.*

*Rep.* 41.) The provision in our statute of uses, (1 *N. R. L.* 74.,) rendering lands liable to execution against the *cestuy que trust*, has no application here; for that provision was taken from a branch of the *English* statute of frauds, and it relates only to those fraudulent and covenous trusts, in which the *cestuy que use* has the whole real beneficial interest, and the trustee only the naked formal legal title. The statute, accordingly, provides, that, on such sales, the land shall be held and enjoyed, " freed and discharged of all encumbrances of the trustee ;" which provision shows, that the statute cannot apply to this case. If the contract had been fulfilled, so as that *Smith* had been entitled to a deed, when the judgment was obtained, and the sale made to *Perry*, the statute might have applied, and there would have been reason and fitness in the application.

But, upon the facts in this case, I cannot perceive any interest in *Smith* which could be sold under the execution. *Perry* purchased only an equitable *chose in action*, and if, from the circumstance of part payment by *Birdsall*, and of *Smith's* possession and improvements, under the implied assent of *Atkinson*, a specific performance might have been enforced ; yet above half of the purchase money was unpaid, and the equitable interest of *Smith*, in the land, at the time of the judgment, could not have exceeded the proportion between the amount of the original consideration, and the sum actually paid, which was less than half of the purchase money.

But judgments and executions at law were not intended by the statute to reach, nor have they been considered in practice as touching, such complicated and delicate interests. There is no more objection to this exemption than to that of *choses in action*, in general, and it is well known that they are not the subject of sale on execution. There must be either a real estate, or an interest known and recognised *at law*, or an equitable title within the purview of the provision in the statute of uses, to which I have alluded, or an execution at law will not reach it. A judgment at law is not a lien on a

mere equitable interest in land, and the execution under it will not pass an interest which a court of law cannot protect and enforce.

I am, accordingly, of opinion, that the plaintiff has not entitled himself to call the defendant, *Perry*, to account for the amount of his sale to *Van Tuyl*, and that the bill ought to be dismissed with costs.

Bill dismissed.