NEW-YORK,
May, 1829.

Jackson
v.
Bateman.

---

### JACKSON, ex dem. LIVINGSTON, *vs.* BATEMAN.

A judgment at law is a *lien* upon the interest of a *cestui que trust,* and such interest may be sold by execution, where the *cestui que use* has the whole beneficial interest, and the trustee only a naked and formal title.

THIS was an action of ejectment tried at the Monroe circuit in March, 1828, for the recovery of a house lot in the village of Rochester.

On the 22d March, 1821, S. D. Mumford being seized of the premises (by his attorney, H. R. Bender,) entered into a contract to convey unto Jonathan Case a house lot in the village of Rochester upon the payment of $125, by annual instalments, the last instalment falling due 22d March, 1825. Bender, the agent of Mumford, proved that all the instalments

The fact of the payment of the *whole* consideration by the alleged *cestui que use,* where a *resulting trust* is set up, should be distinctly submitted to the consideration of the jury.

Where a term is *in trust* for the benefit of the lessor of the plaintiff, a defendant in ejectment cannot set up such trust in bar of a recovery.

were paid by Jonathan Case except the last, which was paid by James Gregory. On whose account Gregory made the payment he did not know, or was informed ; but supposed it was on account of Jonathan Case, as he had never heard of any transfer of the article, and knew no other person interested in the lot. The last payment was made on the 22d March, 1825. Jonathan Case entered into possession of the lot under the article of agreement ; built a house, and lived on the lot until about two years before the trial.

The lessor of the plaintiff claimed to recover the premises under a sheriff's deed executed to him 1st February, 1827, by virtue of a sale under an execution on a judgment in favor of W. Pitkin and J. K. Livingston, against Jonathan Case, for $595, docketed 31st May, 1825. The execution was tested in May, and returnable in August, 1825. The sale took place 8th October, 1825, when the premises in question were struck off for $450 to the lessor of the plaintiff, a certificate of sale given, and the execution returned *nulla bona* for the residue. The suit in which this judgment was obtained was commenced by capias, returnable first Monday of February, 1824.

On the part of the defendant was produced, 1. A deed of the premises in question from S. D. Mumford (the original owner) to Samuel S. Case, bearing date 28th September, 1825, consideration expressed $140 ; 2. A lease from Samuel S. Case to W. Tappan, junior, bearing date 28th March, 1826, for one year, at a rent of $75 ; an assignment to the defendant in September, 1826, and a renewal of the lease 28th March, 1827, at a rent of $80. The defendant further shewed a lease from Samuel S. Case to Jonathan Case of the premises in question, bearing date 7th June, 1824, for one year, at the weekly rent of $1, and proved that Jonathan Case remained in possession of the premises in question until the date of the lease to Tappan, who entered and continued in possession until the transfer to the defendant, who had been in ever since.

It was further proved that at the date of the lease from Samuel S. Case to Jonathan Case, an arrangement was made by which the article for the sale of the lot obtained from the

NEW-YORK, agent of Mumford was transferred to Samuel S. Case ; the
May, 1829. witness however did not recollect that the assignment was by
Jackson writing. Parol evidence of the assignment was objected to,
v. but received, and the question reserved. There was no evi-
Bateman. dence of any consideration paid by Samuel S. Case to Jon-
athan Case, nor of the particulars of the bargain. Sam-
uel S. Case was at the time not worth any property. The
rents since the first letting to Tappan had been received by
him.

The judge decided that Jonathan Case had not a resulting
trust in the premises, and observed that there did not seem to
be any facts in dispute for the jury to pass upon, and charged
them, that in his opinion there could be no pretence of
fraud in the case; that he could discover nothing but the ve-
ry common case of a sale of an article and a deed under it
to the transferee ; that it did not appear that Jonathan Case
was insolvent, nor but that he was abundantly able to pay all
his debts ; that he could not discover the usual *indicia* of
fraud ; but that it was immaterial whether the assignment
was *bona fide* or not, the premises in question having been
conveyed by S. D. Mumford to Samuel S. Case, the legal
title was in him, and a court of law could not protect or en-
force the equities set up by the lessor of the plaintiff, and un-
der this direction the jury found a verdict for the plaintiff ;
which was moved to be set aside.

*F. M. Haight,* for plaintiff.

*S. Boughton,* for defendant.

*By the Court,* MARCY, J. The legal title to the premises
in question has never been in Jonathan Case, but it is conten-
ded by the plaintiff that he had a resulting trust in the prem-
ises at the time of the docketing of the judgment against
Case, and that therefore such judgment was a lien upon
them, and the lessor of the plaintiff acquired title under the
sale by virtue of the execution issued on that judgment.

In March, 1821, Mumford, who then owned the premises,
entered into a contract to convey them to Jonathan Case,
on receiving certain payments mentioned in the article of

NEW-YORK,
May, 1829.

Jackson.
v.
Bateman.

agreement between him and J. Case. By the terms of the agreement the last payment was to be made on the 22d March, 1825, and it was accordingly made; but Mumford did not convey the premises until the 28th September, 1825. Having received the stipulated consideration for the sale of the premises, but not having executed a conveyance, he held the premises as trustee from the 22d March to 28th of September, 1825. Who was the *cestui que trust*? If it was Jonathan Case, the judgment on which the property was sold having been recovered during this time, became a lien upon it by virtue of the 4th section of the statute of *uses*, (1 *R. L.* 74,) as effectually as if he had been seized. It is, however, clearly settled that the statute only applies to cases where the entire estate out of which the use arises vests in the *cestui que use* in consequence of his having paid the whole consideration money. (17 *Johns. R.* 351.) To establish a resulting trust, the proof should be clear that the purchase money was really the property of him who claims the estate or for whom it is claimed. (*Foot* v. *Colvin*, 3 *Johns. R.* 216.) It was a question, and an all important one, in this case, therefore, whether the whole consideration for the premises was paid by Jonathan Case. It was incumbent on the plaintiff to establish this fact clearly. It appears to me that the judge erred in saying that there did not appear to be any facts in dispute for the jury to pass upon. The proof of the payment of the consideration money by Jonathan Case was somewhat strong; all the payments but the last had been made by him, and that was made by a person who the agent of Mumford supposed made it on Jonathan Case's account, because Jonathan Case had the article of agreement and the witness had not heard and did not know of any transfer of it. There was not much evidence to countervail this, except the fact that Mumford, when he conveyed the legal title, conveyed it to Samuel S. Case, and that Samuel S. Case had exercised acts of ownership over the property since he had acquired the legal title. There was also some proof of an arrangement for the transfer of the agreement from J. Case to S. S. Case, but no written transfer was proved, nor any evidence of a con-

sideration paid. It appears to me this evidence should have been submitted to the jury for them to determine, whether it did or did not make out the fact of the payment of the *whole* consideration money by Jonathan Case.

It also appears by the case, that the judge decided that the plaintiff could not recover if Jonathan Case had a trust resulting from having paid all the consideration money for the premises. If this opinion, which was given on a point raised by the counsel, be considered with special reference to that point, or generally, to the case with its attendant circumstances, I apprehend it is too broad to be sustained by this court. The plaintiff contended that the assignment of the agreement by Jonathan Case to S. S. Case was void on the ground of fraud, but the judge declared that it was immaterial whether the assignment was *bona fide* or not, the premises having been conveyed by Mumford to S. S. Case, the *legal title* was in him, and a court of law could not enforce or protect the equities set up by the plaintiff. This opinion of the judge seems not only to be opposed to the doctrine in the cases cited, but to militate against the plain provisions of the act concerning uses. If the proof in this case made out that the whole beneficial interest in the premises was in Jonathan Case, and that S. S. Case was a trustee with a mere naked or formal legal title, the plaintiff should not be sent from a court of law to a court of equity for the recovery of his rights.

The recovery of the plaintiff is resisted on the ground that the defendant was in possession of the premises under a title derived from S. S. Case, who had at the time of executing the lease to the defendant the legal title, and that he is therefore protected as a *bona fide* purchaser. In considering this objection it is perhaps unnecessary to determine how far the defendant's rights, derived from the lease, were affected by the judgment against Jonathan Case, the sale of the premises under the execution issued on that judgment and the purchase by the lessor of the plaintiff. The defendant's lease was dated the 28th day of March, 1827, and the sheriff's deed to the lessor of the plaintiff was executed on the 1st and duly recorded on the 6th February previous. On the supposition that S. S. Case was the mere naked trustee of the

whole of the premises for Jonathan Case, the legal title either passed by the sheriff's deed and vested in the lessor of the plaintiff as the purchaser, and then S. S. Case had not the legal seisin when he executed the lease to the defendant; or the effect of the purchase was to substitute the purchaser for Jonathan Case, and the lessor of the plaintiff was, after the sheriff's sale, the *cestui que use* or *cestui que trust*. If such was the case, the defendant's outstanding term could not be set up to defeat the plaintiff. Lord Mansfield lays it down as a settled principle that where the term is in trust, for the benefit of the lessor or plaintiff, the defendant shall not set it up in ejectment as a bar to his recovery. (1 *T. R.* 758, note, *Doe, ex dem. Bristow,* v. *Pegge.*)

It appears to me that his honor the judge at the circuit erred in supposing the case was one that exclusively belonged to equity; he should have submitted the testimony as to S. S. Case's being a mere trustee of Jonathan Case for the whole of the premises to the jury for them to pass upon.

New trial granted, costs to abide the event.