ARNOT vs. BEADLE.

A judgment was not a lien upon the interest of the cestui que trust in lands under the 22 Car. I, (1 R. L., 75,) as it only authorized the sheriff " to make and deliver execution of all such lands as any other person is seized or possessed to the use of, or in trust for, him against whom execution is sued," &c., " *at the time of execution sued.*" So that at law, while the judgment bound the legal estate of a party from the time it was docketed, it only affected his trust property at the time of execution sued out.

Plaintiff, on the 26th September, 1836, purchased lands sold under execution on a judgment docketed the 6th of August, 1827, against V. and others. Defendant proved that V. and other persons interested in the premises had executed a conveyance of them to D. on the 23d July, 1827, and that D. subsequently refused to take the premises and, by the direction of V. and to pay a debt due by V. to B., conveyed them in September, 1827 to B. *Held*, assuming the title to have passed from V. to D. and a good consideration between V. and B., that the circuit judge was wrong in charging as follows : that though the deed from V. to D. was in fact delivered before the judgment, still if V. afterwards re-purchased the premises and paid the con-

sideration money, a trust resulted in his favor, which was subject to be sold on execution ; and that a title would pass under a sale to the purchaser, notwithstanding D. had before conveyed to B. at V.'s request.

If there was no consideration between V. and B., and the latter is to be regarded as a mere trustee for the former, or if the deed to B. was in fraud and hinderance of creditors, then such an interest resulted to V. as might have been seized and sold on execution, within the statute.  *Per* NELSON, Ch. J., citing authorities.

A sheriff's deed, given in pursuance of the certificate of sale, is not invalidated by the fact that the buyer has not paid the purchase money.

The law relating to partiton and estoppel, considered by NELSON, Ch. J.

EJECTMENT for a lot in the village of Elmira.   The plaintiff gave in evidence a judgment in favor of I. J. & C. V. S. Rosevelt against Vail, Knapp & Swan for $776.25, docketed 6th August, 1827.   The judgment was on a note given 27th May, 1826.   The premises in question were sold upon this judgment to Arnot, the plaintiff, on the 26th September, 1836, for $100 ; certificate given, and deed in pursuance thereof, 14th March, 1838.   Vail, one of the defendants in the judgment, was in possession of the lot at the time of the rendition of the judgment, and had erected a building thereon the preceding year.   The plaintiff had paid the sheriff's fees on the execution, but not the purchase money.   Here plaintiff rested.

The defendant gave in evidence, 1st, a deed of the premises from Vail and wife, and Smith and wife to Dudly for consideration, as expressed, of $540 ; dated 23d July, 1827, and duly acknowledged on 25th same month ; recorded 28th March, 1828.   2d, a deed from Dudly and wife to S. Benjamin, dated September, 1827 ; consideration, as expressed, $500 ; acknowledged 27th September of same year, and recorded 28th March, 1828.   Defendant rested.

The plaintiff then undertook to prove that the deed from Vail and Smith had never been delivered, and to explain how Dudly came to convey the premises to Benjamin, and farther to show if the deed had, in fact, been delivered, it was fraudulent and void as respected the Rosevelt judgment.   It was proved that in the year 1826 Vail, Smith, Roe and Dudly purchased of Winans half an acre of land of which the premises are a part, and took an article of agree-

ment in the name of Vail & Smith; consideration $400. By a written agreement between the purchasers, Smith was to have 16 feet front and 218 feet rear ; Roe, 26 feet front, 218 feet rear; Vail, 33 feet front and 218 feet rear ; Dudly, 21 feet front and 218 feet rear. [The last is the lot in question.] $300 to be paid down, each to pay in proportion to the number of feet he had, and balance in like manner as it fell due. The first payment was made, and Dudly paid his proportion. Foster purchased out Roe and took his place, and Smith, Dudly and Foster severally agreed with Vail to erect a building upon the Winans' lot 93 feet front by 32 rear, for which they were to pay him $21 per front foot. Vail proceeded to erect the building, but did not complete it.

On the 1st May, 1827, Winans conveyed by deed to Vail and Smith, and took back a bond and mortgage for balance of consideration money, $600. About two thirds of purchase money had been paid, each purchaser advancing his proportion. By the building contract with Vail, it was agreed that when he had completed the building, and should together with Smith give deeds to Foster and Dudly for their proportions of Winans' lot, they would severally execute to Vail their respective bonds and mortgages conditioned to pay him the sums respectively due him for the erection of said building. Vail and Smith were also to execute deeds to each other for their respective lots. It appeared that Vail and Smith had deeded to Foster his share 23d July, 1827, and that he had given back bond and mortgage. Vail and Smith had also executed to each other deeds of their respective shares on same day, and said Smith gave back bond and mortgage. The securities back to Vail for the erection of the building were dated 23d September, 1827, for the reason it was not completed till about that time.

Dudly, a witness for plaintiff, testified, that the deed to him, which the defendant had given in evidence, from Vail and Smith had never been delivered to him; he refused to receive it on account of dissatisfaction with the building erected by Vail; and on the 22d September, 1827, they came to a settlement of the dispute by which the contract for

building, so far as he was concerned, was given up, and Vail to keep the lot, and refund the money he, Dudly, had advanced. Vail on that day gave to witness a release of all liability for the building.

Smith was also called as a witness for plaintiff and testified, that the attorneys for the defendants in the Rosevelt judgment, or one of them, called on him in July, 1827, in relation to giving deeds to the other parties, and said there would be a judgment against Vail in a few days, and that deeds should be given before the judgment. The deeds were all made out accordingly and left in possession of Vail. The building was not then completed; the purchasers complained of the building, and Dudly refused to take his deed on that account. This evidence was objected to so far as the declaration of the attorneys went, but was admitted. Vail was also sworn, and testified that Dudly refused to take the deed. That afterwards a settlement took place between them, he having threatened to take advantage of Dudly on a contract respecting another lot, if he insisted upon the advantage of non-fulfillment of the building contract. The testimony of the witness was contradictory as to the fact of the delivery of deed to Dudly.

On the 2d February, 1827, Vail assigned to H. W. Wickham in trust for his creditors, all his personal property, including a store of goods in Elmira. The assignee was left in possesion of all the property, and conducted the business afterwards under a power of attorney, the same way as before. Much evidence was given tending to show that this assignment was colorable, and made in collusion with Benjamin, who was the principal creditor. Benjamin had procured an assignment also of Winaps' mortgage upon the whole lot and foreclosed the same, but the money was raised before the premises in question were reached in the order of sale, and therefore no question arises under it.

After the testimony (which was quite voluminous) was closed, counsel for defendant raised the following points: 1. He asked the judge to instruct the jury, that if the deed from Vail to Dudly was delivered before the docketing of the judgment in good faith, then defendant was entitled to

Arnot v. Beadle.

verdict. 2. That to avoid the effect of the deed, it was necessary for plaintiff that Dudly received the deed with the view of defrauding his creditors, or that he knew such was the intent of Vail. 3. That if the title passed from Vail before the judgment, then it was not a lien. 4. That Vail and Smith being equitably bound to convey to Dudly, it was not fraudulent as against creditors for them to do so, although they knew a judgment was about to be obtained against one of them, and though they intended to avoid the lien. 5. That the rule of law and equity is, that partnership property shall first go to pay partnership debts, and individual property shall first go to pay individual in preference to partnership debts. 6. That if Vail's object in procuring Dudly to convey to Benjamin was for the purpose of appropriating his individual property to pay individual debts due him, then the act was not fraudulent as to partnership creditors, or as to the judgment in favor of the Rosevelts. 7. That a man may prefer his creditors. 8. That the question whether the defendant's debt had been. paid before or after he received the deed from Dudly can not arise, as there was a valid transfer from Vail to Dudly in July, 1827, and the judgment was not a lien. 9. That if the deed was never delivered, then Smith's title has never been divested, and he is the owner of a moiety of the premises, and as plaintiff has acquired the title of Vail, he and Smith are tenants in common, and plaintiff is entitled to only an undivided half, and can not recover as he has claimed the whole in his declaration. 10. If the plaintiff be tenant in common with Smith, he can not recover without proving an ouster. 11. Execution against property of co-partners can not be levied upon the individual property of one of them. 12. That if title was conveyed to Dudly in good faith before the docketing of the judgment, and if Vail was justly indebted to Benjamin, and for the purpose of paying or securing pay ment, procured Dudly to convey to him the premises, this would not be such a resulting trust as would be subject to the lien of the judgment, though no consideration passed to Dudly except from Vail.

24

The judge charged, 1. That it was not necessary for plaintiff to show payment of bid to give effect to his title under the deed from sheriff. (Exception taken to this.) 2. That if the title passed from Vail before the judgment to Dudly, the judgment was not a lien and plaintiff acquired no title, if the deed was not given to defraud creditors. (No exception.) 3. That Vail and Smith being equitably bound to convey to Dudly, it was not fraudulent against creditors if they did convey, though they knew a judgment was about to be recovered against Vail, and also knew that Vail and Smith intended thereby to avoid the lien. (No exception.) 4. If the deed was delivered before the judgment, in good faith, and without any fraud, then the judgment was no lien; but if not actually delivered before, the premises were bound and title passed by sale to plaintiff. (No exception.) 5. In law and equity individual property shall first go to payment of individual debts, and partnership property to pay partnership debts. (Exception by plaintiff.) 6. A debtor may prefer a creditor. (No exception.) 7. But if assignee of Vail left the property in possession of assignor under a power to manage and sell for him, Vail would be deemed an agent, and if property was wasted the assignee would be liable for all the trust property so lost or converted by agent to his own use. (No exception.) 8. If the object of Vail, in procuring Dudly to convey to Benjamin, was for the purpose of applying his individual property to pay his individual debt due him, it was not fraudulent as to the partnership creditors, or as to the judgment. (No exception.) 9. But if the land was conveyed by Vail through Dudly to Benjamin, by way of security for debts due, though in the form of an absolute sale, it would still be regarded as a mortgage, and the interest of Vail the proper subject of a sale on execution; and when mortgage money was paid the title would become absolute in the purchaser. (No exception.) 10. If the deed was delivered to Dudly before the judgment, yet if Vail afterwards purchased the premises, and paid the consideration money, the payment by Vail created a resulting trust in favor of Vail and made them subject to the judgment against him; and the title would pass to the purchaser,

Arnot v. Beadle.

though the deed was given to Benjamin by his (Vail's) direction. The defendant excepted to this part of the charge.

The judge declined to charge the jury further and an exception was taken to the refusal to charge under the 8th, 9th, 10th, 11th and 12th points of defendant. Verdict for plaintiff. Defendant moves for a new trial on a bill of exceptions.

*By the Court,* NELSON, Ch. J. 1. The principal question in this case arises out of the charge of the learned judge when he stated, that though the deed from Vail to Dudly was in fact delivered before the judgment, still if he (Vail) afterwards re-purchased the premises and paid the consideration money, a trust resulted in his favor, which was subject to be sold on execution; and that the title would pass under a sale to the purchaser, notwithstanding Dudly had before conveyed to Benjamin at Vail's request.

This charge should be taken in connection with the proposition put forth by the counsel for the defendant, which was, that assuming the title to have passed to Dudly in good faith before the docketing of the judgment, yet, if Vail was justly indebted to Benjamin, and for the purpose of paying or securing said debt, he had procured a conveyance to him from Dudly, this would not create such a resulting trust as would be subject to the judgment, though the consideration passed solely from Vail to Dudly.

Considerable proof appears in the case tending to establish such indebtedness; and also that Vail procured the deed of September, 1827, from Dudly to Benjamin in part security or satisfaction of same. It is admitted that whatever consideration was received by Dudly for said conveyance, was paid by Vail.

The case of *Jackson* v. *Seelye*, 16 Johns., 197, is a decisive authority against the view taken by the judge. There one Beekman contracted, by parol, for a lot of land with one White, and paid the purchase money, against whom (B.) a judgment was afterwards recovered; but before the sale on execution White had conveyed, at the request of Beekman, to one Little to secure the payment of a debt due, and under

whom the defendant claimed. The lessor of plaintiff was the purchaser under the execution. The court held, that the conveyance of White to Little did not create a resulting trust in favor of Beekman although White gave the deed on the consideration paid by Beekman, yet as between Beekman and Little the former renounced to the latter the benefit of the consideration in satisfaction of a debt, which was the same, in effect, as if Little himself had paid the consideration.

The judgment is not a *lien* upon the interest of the cestui que trust under the 22d Car., 2 (1 R. L., 1813, p. 75), as it only authorizes the sheriff "to make and deliver execution of all such lands as any other person is seized or possessed to the use of, or in trust for him, against whom execution is sued," &c., "*at the time of execution sued.*" So that at law, while the judgment binds the legal estate of a party from the time it is docketed, it only affects his trust property at the time of execution sued out. (*Hunt* v. *Coles*, 1 Comyn, 226, and *Haines* v. *Pugh*, 4 Bing., 335, cited in 18 Wend., 249.)

Again, as a resulting trust may be proved, so it may be rebutted, by parol, and hence, says Mr. Sugden, such proof will be admitted to prove the purchaser's intention that the person to whom the conveyance was made should take beneficially, and, if satisfactory, he will be entitled to the estate; but the proof rests upon him to show that the man from whom the consideration moved did not mean to purchase in trust for himself, but intended a gift to a stranger. (Sugden on Vendors, 619; *Jackson* v. *Feller*, 2 Wend., 465 and 469, and cases there cited.)

Now although the proof was clear, that whatever consideration may have been received by Dudly for the conveyance to Benjamin was paid by Vail (the defendant in the judgment), there was evidence tending to show an indebtedness from Vail to the latter, and that the deed was made to him in part satisfaction of, or security for the same; and hence the broad proposition of the learned judge, that the title would pass to the purchaser, notwithstanding this deed was given by the direction of V., when applied to the facts

in the case, can not be upheld. Assuming the transaction between Vail and Beekman to have been fair, and founded upon a good consideration, no trust would result; an absolute title passed by the deed to the latter; and so the judge should have charged upon this branch of the case.

If the relation of debtor and creditor did not in fact exist between Vail and Benjamin, and the latter is to be regarded as a naked trustee of V.; or, if the deed was made in fraud and hinderance of creditors, I do not deny but that such an interest resulted to V. as might have been seized and sold on execution, within the statute. The case of *Jackson* v. *Bateman*, 2 Wend., 570, is a full authority for this conclusion. See also *Bogart* v. *Perry*, 1 Johns. Ch., 52, and same case in error in 17 Johns., 351; 3 Paige, 220.

2. Assuming that the deed from Vail and Smith to Dudly was actually delivered, in respect to which fact there is much ground for doubt, then the question as to the effect of a parol partition among the purchasers from Winans does not arise. The whole title passed by the conveyance; and the case must turn upon the repurchase by Vail and deed to Benjamin. But upon the other view, to wit, the non-delivery of the deed, it becomes material to inquire as to the amount of interest acquired under the judgment and execution. Winans conveyed to Vail and Smith, who held the estate for themselves and the two other purchasers. A written agreement was entered into between all the parties in interest, partitioning the premises by metes and bounds; but no release was executed in respect to the parcel in question. This was set off to Dudly, but he, not being a party to the deed of Winans, at law took no part of the legal estate, and stood only in the relation of cestui que trust in respect to the portion set off to him. The title was still in the two grantees, Vail and Smith, even after the agreement making partition; and hence the judgment against Vail could attach only to a moiety of the lot.

If Dudly had been a party to Winans' deed, then the agreement making partition among the several tenants in common would have had the effect of severing the interests, even without a release. (*Ryers and others* v. *Wheeler*, 25

Wend., 437, and cases there cited.) But as he was not a joint grantee, and stood only in the relation of cestui que trust, I do not see that this effect would follow the partition as to him.

Be this as it may, however, it is clear the only legal interest that can be claimed for Vail in this parcel, and upon which the judgment could operate, is an undivided moiety.

But, assuming the deed from Vail to Dudly has not been delivered, and further, that Vail has purchased out Dudly's interest, he would then have an equitable claim upon Smith for a conveyance, which might be enforced in chancery; a judgment against Vail would also operate as an equitable lien upon such interest, which might be enforced in the same way. (18 Wend., 236.)

There is also another view of the law in relation to this part of the case that may, perhaps, arise upon the new trial, if it does not already appear, which will supersede the one taken above.

Vail, it is said, was in actual possession of the whole lot at the rendition of the judgment, and continued thus to occupy till he surrendered it to Benjamin. He, therefore, would be estopped from denying the title of the purchaser under an execution against himself, and so would all persons subsequently claiming under him. (3 Caine, 189, and 10 Johns., 223; 9 Cow., 81.) So in respect to strangers or intruders entering without right. (2 Johns., 22; 4 id., 211; 7 Cow., 637.)

Now, assuming that the deed from Vail to Dudly had not been delivered; the one from Dudly passed no estate or interest whatever to Benjamin, and his subsequent entry was without right. If he entered under Vail, he takes his place and is estopped from controverting the title of the purchaser; if under the deed of Dudly, then he is without right and equally estopped, for Dudly had not even an equitable interest at the time of this conveyance if the deed from V. to him had not been delivered. That was rebutted by the proof that Vail had returned the purchase money.

It has been urged, if the plaintiff is only entitled to a moiety of the lot and is to be regarded as standing in the re-

lation of tenant in common with Smith, he can not recover without first showing an actual ouster.

The answer is, the defendant does not connect himself with the title of Smith, and can not therefore set up that relation with the plaintiff. The principle has no application to the defence, as the objection can be taken only by the co-tenant or by one under him. (1 Hill, 121.)

There is nothing in the objection that the plaintiff has not paid the purchase money to the sheriff, as the fact, if true, would not invalidate the deed given in pursuance of the certificate of sale. If it has not been paid, the plaintiff is still liable to the sheriff, who may enforce payment or not at his pleasure. The effect of his deed can not be avoided in this way.

New trial granted.