No. 2.—JESSE PITTS, plaintiff in error, *vs.* JOHN MCWHORTER and WILLIAM BULLARD, defendants in error.

| 3 | 5 |
|---|---|
| 115 | 973 |
| 3 | 5 |
| 121 | 379 |
| 3 | 5 |
| f129 | 641 |

[1.] If A buy land from B, and pay down the entire consideration or purchase money, and take an unconditional bond for titles, and there is nothing more for him to do in order to consummate the contract, B is a mere naked trustee, and the legal estate vests in A ; if not under the 27 Henry VIII., commonly called the Statute of Uses, yet it comes within the 10 sec. of the 29 Charles II., chap. 3, and is subject to levy and sale on an execution and judgment against A, at law.

[2.] It would seem that 32 Henry VIII., which declares all conveyances made for maintenance, void, and which statute was in affirmance of the common law, is still of force in this State.

And where in an action of ejectment several demises are laid, one from the grantor and another from the grantee of such a deed, it was held that the plaintiff might recover, though he could not on the demise of the grantee only.

Ejectment. In Macon Superior Court. Tried before Judge WARREN. April Term, 1847.

For the facts of the case, and the charge of the Court below, which was excepted to, the reader is referred to the opinion delivered by the Supreme Court.

JOHN M. GILES for the plaintiff in error.

The principal question presented by the bill of exceptions in this case is, whether Henry L. Sims had such an interest in the premises in dispute as was vendible under execution.

The evidence shows that Sims had contracted for the land and paid the full amount of the purchase money, that the contract was in writing, signed by McWhorter, the drawer of the lot, and expressed the payment of the consideration money.

By virtue of the statute 29 Charles II., chap. 3, sec. 10, lands held in trust may be sold under execution against the *cestui que trust.*   *Prince* 916 ; 1 *Saund. U. & T.* 272 ; 2 *Black. Com.* 337.

A resulting trust, it has been held, is within this statute. *Foote* vs. *Colvin*; 3 *Johns.* 216.

After a valid contract of sale of land, and performance by the purchaser of his part of the agreement, the vendor is undoubtedly seised in trust for the vendee.

Judgments obtained afterwards against the vendor will not, in equity, bind the estate.   *Finch* vs. *Earl of Winchelsea*; 1 *P. Will.* 278; 4 *Kent Com.* 154.

The Court below held, that in order to create a trust estate liable to be sold under execution, there must be a conveyance by deed at the time of raising the trust. But this is certainly erroneous; for the Statute of Frauds clearly recognises the validity of trusts declared in writing without deed, and of resulting trusts without writing.   1 *Saund. U. & T.* 316.

The 10th sec. of the Statute of Frauds obviously includes all kinds of trusts, where the entire beneficial interest is in the *cestui que trust*, and the naked formal legal title only, in the trustee. The manner or form in which the trust is created or expressed is matter of evidence merely, and does not affect the nature of the interest.

When this section of the 29th Ch. II., c. 3, is compared with the 27th Henry VIII., c. 10, it will be perceived that the language is similar, 2 *Black. Com.* 333, and should receive a similar interpretation. Before the statute of Henry VIII., "for transferring uses into possession," a bargain and sale of land was only a kind of real contract, whereby the bargainor agreed, for a pecuniary consideration, to convey the land to the bargainee. 2 *Black. Com* 338. This raised a use, which, before the Statute of Uses, was similar to a trust estate now ; it was recognised only in the Courts

of Equity. Since the statute, it operates to convey the legal estate if the subsequent statute of 27 Henry VIII., c. 16, is complied with, which requires the bargain and sale to be by indenture, and enrolled, etc., in order to pass the legal estate. A contract of sale, though reduced to writing, and the purchase money paid, is not effectual, under the Statute of Uses, unless it is contained in a deed enrolled according to the requisitions of 27th Henry VIII., c. 16. But it vests in the purchaser a trust estate, and that trust estate is as clearly within the 10th section of the Statute of Frauds as an use raised by bargain and sale, is within the 29th Henry VIII., c. 10. There is no statute, and no rule of law, requiring the contract to be under seal, in order to vest a trust estate.

The doctrine that the interest of the mortgagee, before entry or foreclosure, is not liable to levy and sale under execution, was relied on in the Court below, as being inconsistent with the position assumed by the plaintiff in error. But it is really not so. The mortgage in form conveys the legal estate; the mortgagee is trustee the mortgagor, *cestui que trust*; the latter having an equity of redemption cognisable formerly in the Court of Chancery only; but, notwithstanding the form of the conveyance, the courts of law in this country treat the mortgagor as owner. His interest is vendible under execution, and the mortgagee has only a chattel interest, which cannot be sold under execution. 4 *Kent Com.* 160.

In the case of *Bogart* vs. *Perry*, 1 *Johns. Ch. R.* 52, Chancellor Kent distinctly recognises the principle here assumed. The case was carried, by appeal, to the Court for the Correction of Errors. *S. C.* 17 *Johns.* 351. Spencer, Ch. J. of the Supreme Court, delivered the opinion, and he, in still stronger terms, recognises the doctrine, that if under a contract of sale of land, reduced to writing, the purchaser has paid the entire consideration money, the vendor holds the land in trust for the purchaser, and that the interest of the purchaser, in such a case, may, under the 10th section of the Statute of Frauds, be sold under execution. See also Jackson vs. Bateman. 2 *Wend.* 570. See also 4 *Kent C.* 308, *n. (a)*; *Ibid* 437, where it will be perceived that, since these decisions, the N. Y. revised statutes have prohibited the sale under execution of the interest of a vendee, who holds a contract of sale. If this enactment extends to a case where the contract has been fully performed by the vendee, then it is a recognition of the correctness of the position here taken.

Were the law otherwise, great frauds might be committed by

debtors upon their creditors, by buying lands, paying for them, and then merely taking an agreement to convey, from the vendor.

In this case there was obviously no injustice done to McWhorter by the sale of Sims' interest. He had nothing, claimed nothing, and conveyed nothing to Bullard but the mere naked legal title, and this he held subject to the direction of Sims.

And what right has Bullard to complain? He stands in Sims' shoes. He, in form, obtained a conveyance from McWhorter, but paid him nothing therefor. He obtained all the right he had from Sims, and there is no evidence that he paid Sims a valuable consideration; and, if he did, he stands upon no higher ground than other purchasers of property liable to judgment and execution. Besides, he had actual notice of the judgment and execution against Sims, of the sale under them, and of the possession of Pitts before he obtained a conveyance from McWhorter. He is therefore not protected by want of notice. 4 *Kent C.* 180.

And as there is no evidence of payment of value by Bullard to Sims, except perhaps the declaration of Bullard himself, it may be considered a case of resulting trust. Bullard obtains a conveyance to himself of land, for which Sims had paid the full amount of the consideration money; this would be a case of resulting trust in favour of Sims.

But the Judge charged the jury, that even if Sims had an interest subject to be sold under execution, the sale of it only gave the purchaser a right to go into equity for a conveyance. But the statute intended to make the trust estate, when sold under execution, the legal estate, and it declares that it shall be freed and discharged from all incumbrance of the trustee. It operates in this respect precisely as the statute 27 Henry VIII. c. 10 does upon uses, by virtue of which the *cestui que use* becomes the legal owner.

Eli Warren and Wm. P. Green, for the defendant in error.

C. B. Strong, in conclusion, for the plaintiff in error, in his argument cited and commented upon the following authorities, in addition to and with those cited by his associate Mr. Giles. *Hill on Trustees,* 272, 273; *Brown* vs. *Graves,* 4 *Hawks,* 342; *Richards* vs. *McKie & Vaughan, Stat. Eq. R. S. C.* 184; *Lynch et. al.* vs. *Utica Ins. Co.* 18 *Wend.* 236.

Pitts *vs.* Bullard.

*By the Court* — LUMPKIN, J. delivering the opinion.

John McWhorter, one of the lessors of the plaintiff in eject-ment, drew lot No. 74, in the 1st District of, originally, Muscogee, now Macon County, and some twelve or fifteen years since sold said lot to one Henry L. Sims, for a horse valued at $100, and gave to Sims his bond for titles, the grant not then having issued. Sims afterwards, in 1835, sold the land to William Bullard, and trans-ferred to him the title bond.

An execution in behalf of Smith and Kingley for the use of George Smith, against the said Henry L. Sims and William H. Underwood as his security, and issuing from Hall Superior Court, September Term, 1834, was levied on said lot of land as the pro-perty of Sims, the defendant, and the lot was purchased by Eliab Jones, and the sheriff's titles executed to him on the 22d day of July, 1837, the grant from the State having issued about one month before the sale, to wit, on the 27th day of June, 1837. Jones conveyed to Jesse Pitts, the defendant in ejectment, by deed bearing date the 25th day of December, 1837. Pitts went immediately into possession, erected a log cabin, enclosed a horse lot, and made some other improvements. Bullard called at the place in the winter of 1837, and, finding Pitts in possession, he applied to McWhorter for a deed, which was executed, bearing date, 18th day of January, 1838, and the bond surrendered up to the obligor. An action of ejectment was now brought in the name of Thomas Goodtitle, upon the several demises of John Mc-Whorter and William Bullard, against Richard Holdfast, casual ejector, and Jesse Pitts, tenant in possession.

And this cause coming on for trial at the April Term, 1847, of the Superior Court of Macon County, was submitted, upon the forego-ing statement of facts, to the jury, upon the following charge of Judge Warren, *i. e.* " That the jury could not regard any equitable title which Pitts might possess; that the legal must prevail against the equitable title ; that the title of Sims to the land was not such as to subject it to the lien of the judgment and execution under which it had been sold; that the interest of the purchaser of real estate, although he may have a contract in writing, and the whole consideration money be paid by him, is not subject to levy and sale under the statute of 29 Ch. II. sec. 10, unless a deed, having all the requisites of a legal conveyance, is executed to him,

Pitts *vs.* Bullard.

or some one in trust for him; that such an estate cannot be sold under execution, and, if it is sold, it only vests an equitable interest in the purchaser which will authorize him to call for the interposition of a court of equity; that a court of law cannot recognise his title.

"That the deed from McWhorter to Bullard was not void, either at common law or under the statute 32 Henry VIII. against the sale of pretended titles; and that, if it was, the title was still in McWhorter, and a recovery might be had in his name."

To all of which charge, counsel for the defendant below, excepted. [1.] We do not think it necessary to discuss in detail all the points insisted upon in the argument for and against the various grounds contained in this charge. In some of them we concur with the presiding Judge. We agree with him in holding, that sitting as a court of law, we can look only to the legal estate, and see whether a legal title has been conveyed through the sheriff's sale to Pitts. If he has an equitable interest only, he must claim it elsewhere. And it is not for us to *decide*, nor are we even at liberty to presume to *think*, what a court of equity would or would not do in the premises.

If Henry L. Sims, the defendant in the *fi. fa.*, from the time he bought the lot of land from McWhorter, and *paid for it*, had such a *legal estate* as subjected it to levy and sale, then, of course, it was not in his power to have defeated the judgment lien, by the transfer which he made in 1835 to Bullard. And the purchaser at sheriff's sale acquired a full and complete legal estate in the premises.

By the common law in England, a man could only have satisfaction by execution, out of goods and chattels and present profits, of lands. Afterwards, by a writ of *elegit*, provided by statute, goods and chattels were not sold, but appraised and delivered to the plaintiff. If these were not sufficient to satisfy the debt, then the moiety of the freehold lands of the debtor, whether held in his own name or in trust, were delivered to the plaintiff, till, out of the rents and profits, the debts should be levied.

By the statute of 5 Geo. II., for the more easy recovery of debts in the Colonies, and which is made of force by our adopting statute of 1784, feudal principles are laid aside, and the houses, land, and negroes, and other hereditaments and real estate of debtors, are made liable to execution.

This act is exceedingly broad, and is in the following words :—

" And be it further enacted by the authority aforesaid—that from and after the said 29th of September, 1732, the houses, lands, *negroes*, and other hereditaments and real estates, situate or being within any of the said *plantations* belonging to any person indebted, shall be liable to and chargeable with all just debts, duties and demands, of what nature or kind soever, owing by any such person to his Majesty or any of his subjects ; and shall and may be assets for the satisfaction thereof, in like manner as real estates are, by the law of England, liable to the satisfaction of debts due by bond or other specialty; and shall be subject to the like remedies, proceedings and process, in any court of law or equity of the said plantations respectively, for seizing, extending, selling or disposing of any such houses, lands, *negroes*, and other hereditaments and real estates, towards the satisfaction of such debts, duties and demands, in like manner as personal estates in any of the said plantations respectively are seized, extended, sold or disposed of, for the satisfaction of debts."—*Schley's Digest*, 365.

It would seem that the alteration in the *fieri facias*, from goods and chattels, to goods and chattels, *lands and tenements*, owes its origin in this State to the statute, and that the authority for its introduction rests solely upon it and not upon the judiciary act of 1799, and the subsequent acts amendatory thereof.

It establishes another fact very conclusively, and that is, that the Parliament of Great Britain, subjected *negroes*, not by inference or implication, but by *name*, to levy and sale under execution for debt, in Georgia and the other Colonies.

We have seen what estates were liable in England, by the common law, to the satisfaction of debts by execution. The statute, 29 *Ch. II. ch.* 3, *sec.* 10, expressly adopted in this State, (*Prince*, 916,) in addition, *makes trust estates liable.* That section is in the following words: " It shall and may be lawful for every sheriff or other officer to whom any writ or precept is directed, at the suit of any person, of, for and upon any judgment, statute or recognisance, to do, make and deliver execution unto the party in that behalf suing, of all such lands, tenements, rectories, tithes, rents, and hereditaments, as any other person or persons be, in any manner or wise, seised or possessed in trust for him against whom execution is so sued, like as the sheriff or other officer might or ought to have done, if the said party against whom execution was sued, had been seised of such lands, &c., of such estate, as they be seised of in trust for him at the time of the said execution

sued; which lands, &c., by force and virtue of such execution, shall accordingly be held and enjoyed, freed and discharged, from all incumbrances of such person or persons as shall be so seised or possessed in trust for the person against whom such execution shall be sued; and if any *cestui que trust* hereafter shall die, leaving a trust in fee simple to descend to his heir, then, and in every such case, such trust shall be deemed and taken, and is hereby declared to be, assets by descent; and the heir shall be liable to and chargeable with the obligation of his ancestors, for and by reason of such assets, as fully and amply as he might or ought to have been, if the estate in law had descended to him in possession, in like manner as the trust descended."

Thus it will be perceived, that this statute, as far as it goes, changed the common law, and made a trust, before cognisable in a court of equity only, the subject of a legal proceeding. Now, is the interest of Sims, which was seized and sold under the execution, against him and Underwood, at the instance of Smith and Kingley, for the use of George Smith, such an interest as could have been seized and extended in England under this statute?

No case has been cited, and I can find none, which broadly and directly meets this inquiry. The principle which it involves, however, I am satisfied has been clearly settled.

In *Livingston* vs. *Bateman,* 2 *Wend.* 570, one S. D. Mumford, being seised of the premises, entered into a contract to convey unto Jonathan Case, a house and lot in the village of Rochester, upon the payment of $125, by annual instalments, the last falling due 22d March, 1825. It was in proof that Case paid all instalments, except the last, which was paid by James Gregory. It did not appear on whose account Gregory made the payment; it was supposed, however, to be on account of Case. Jonathan Case entered into the possession of the lot under the article of agreement, built a house, and occupied it until about two years before the trial. Livingston brought ejectment for the premises, under a sheriff's deed, executed to him, 1st February, 1827, by virtue of a sale under an execution on a judgment in favour of W. Pitkin and J. K. Livingston, against Jonathan Case, for $595, docketed 31st May, 1825. The sale took place 8th October, 1825, when the premises in question were struck off for $450 to Livingston, the plaintiff in ejectment.

The defendant showed a deed to the lot, from Mumford, the original owner, to Samuel S. Case, dated 28th September, 1825;

consideration expressed $140. A lease from Samuel S. Case to W. Tappan, Jr., bearing date 28th March, 1826, for one year, at the rent of $75; an assignment to Bateman, the defendant in ejectment, in 1826, and a renewal of the lease, 28th March, 1827, at a rent of $80. The defendant further showed a lease from Samuel S. Case to Jonathan Case, of the premises in question, bearing date 7th June, 1824, for one year, at the weekly rent of $1, and proved that Jonathan Case remained in possession of the premises until the date of the lease to Tappan, who entered and continued in possession until the transfer to the defendant, who had been in ever since. It was further proved, that at the date of the lease from Samuel S. Case to Jonathan Case, an arrangement was made, by which the article for the sale of the lot, obtained from Mumford, was tranferred to Samuel S. Case.

The Circuit Judge, upon this statement of facts decided, that Jonathan Case had not a resulting trust in the premises. And the same having been conveyed by Mumford to Samuel S. Case, the legal title was in him, and a court of law could not protect or enforce the equities set up by the lessor of the plaintiff; and, under this direction, the jury found a verdict for the defendant, which was moved to be set aside. The court granted a *new trial.* And Justice Marcy in delivering the opinion, after recapitulating the facts, says—

"Mumford having received the stipulated consideration for the sale of the premises, but not having executed a conveyance, he held the premises as trustee for the purchaser, from the date of the payment of the last instalment. Who was the *cestui que trust?* It was Jonathan Case; and the judgment on which the property was sold, having been recovered during this time, became a lien upon it, by virtue of the 4th section of the Statute of *Uses,* 1 *R. L.* 74, (*which is an exact copy of* 29 *Ch. II. ch.* 3, *sec.* 10,) as effectually as if he had been seised. It is, however, clearly settled, that the statute only applies to cases where the entire estate out of which the use arises, vests in the *cestui que use, in consequence of his having paid the whole consideration money.* It was a question then, and an all important one in this case, whether the whole consideration for the premises was paid by Jonathan Case. And the evidence should have been submitted to the jury for them to determine, whether it did or did not make out the fact of the payment of the *whole* consideration money, by Jonathan Case.

"It also appears by the case that the Judge decided, that the

plaintiff could not recover, if Jonathan Case had a trust resulting from having paid all the consideration money for the premises. I apprehend that this opinion is too broad to be sustained by this court. It is not only opposed to the cases cited, but militates against the plain provisions of the statute. If the proof in this case made out, that the whole beneficial interest in the premises was in Jonathan Case, and that Samuel S. Case was a trustee, with a mere naked or formal legal title, the plaintiff should not be sent from a court of law to a court of equity for the recovery of his rights."

The cases cited in this decision, were *Foot* vs. *Colvin*, 3 *Johns.* 216, and *Bogert* vs. *Perry*, 17 *Johns.* 351. In the first of which it was held, that if A buys land with the money of B, and takes a conveyance to himself, he is a trustee for B ; and that the land might be seized and sold on an execution under a judgment against B, the *cestui que trust.* And Spencer, Justice, says, " In the present case, the evidence offered and overruled, would, we are to presume at present, have established the fact, that the farm was purchased with *James Litchfield's* money, and that Josiah C. Foote was the mere pipe of conveyance. The proof would consequently have shown an estate in *James Litchfield*, liable to be sold on execution under the 10th section of the Statute of Frauds. Indeed, without the aid of that statute, I consider *James Litchfield*, if he advanced the purchase money, as having an interest liable to be sold on execution."

In the case in 17 *Johns.* the same court ruled, that the 10th sec. of 29 Charles, rendering lands liable against the *cestui que use* or *trust*, applies only to those *trusts* where the *cestui que use* or *cestui que trust* has the *whole* beneficial interest in the land, and the trustee the mere naked or formal legal title. And that it is not applicable to a case where one person enters into a contract for the sale and conveyance of land to another, and the vendee pays *part* of the consideration and enters into possession of the land, but neglects to pay the residue of the purchase money ; for the vendor is not seised to the use of the vendee until the *whole* consideration is paid, and until then the vendee has a mere *equitable* interest, on which a judgment at law is not a *lien*, nor can it be sold under an execution.

Spencer, *now* Ch. Justice, remarks — " It is true, that since the statute of 27 Henry VIII. ch. 10, the *cestui que use* is the real owner of the estate, and his interest is bound by a judgment and

may be sold on execution; and our statute concerning uses, 1 *N. R. L.* 72 ; 1 *Rev. Stat.* 727, *sec.* 47, contains the provisions of the. *British* statutes of 19 Henry VII. ch. 15, 27 Henry VIII. ch. 10, and 29 Ch. II. ch. 3, sec. 10.   But it cannot admit of a doubt, that the statute embraces those cases only, where the entire estate, out of which the *use* arises, vests in the *cestui que use, in consequence* of his having paid the *whole consideration money ;* and it intended to subject to execution the real estate or hereditaments of a person having the entire interest therein, but which was nominally and formally vested in another person; and I have met with no case or *dictum,* countenancing the doctrine of a divided use, vested in the vendor and vendee."

And this case Chancellor Desaussure, in delivering the opinion of the Court of Appeals of South Carolina, in *Richards* vs. *McKie & Vaughan,* Columbia, December, 1824, calls, " a great authority, both on account of the learning and talents of the court which decided it, and of the force of reasoning on which the decision is founded."

When the case of *Bogert & Perry* was first heard, in June, 1814, and which was among the earliest Chancery decisions of Chancellor Kent, he having been appointed the February preceding, he said — " The provision in our Statute of Uses rendering lands liable to execution against the *cestui que trust,* was taken from a branch of the English Statute of Frauds, and it relates only to those covinous trusts, where the *cestui que use* has the whole real beneficial interest. *If the contract had been fulfilled, so as that Smith* (the vendee) *had been entitled to a deed, when the judgment was obtained and the sale made to Perry, the statute might have applied, and there would have been reason and fitness in the application."* 1 *John. Ch. Cas.* 52.

This doctrine underwent a searching and thorough examination in the case of Lynch and others, *appellants,* and the Utica Insurance Company, *respondents,* 18 *Wend.* 236.   And Chief Justice Nelson in pronouncing the judgment, after referring to the fact that the New York Statute was taken from the English Statutes, said, he considered it settled that in the case of a clear and simple trust for the benefit of the debtor, the judgment has a lien thereon, and that it is such an interest as could be sold on execution within the statute."

*Jackson* vs. *Walker,* 4 *Wend.* 462, and *Jackson* vs. *Parker,* 9 *Cowen,* 73 ; *Richards & McKie, Stat. Eq. R. S. C.* 184; *Hopkins*

vs. *Stump,* 2 *Harris & John.* 301, are all cases in support of the same doctrine—*i. e.* that lands are liable on an execution at law, against a *cestui que trust,* who has the whole beneficial interest and the trustee only a mere naked legal title.    And numerous other American cases might be adduced in confirmation of this position.

In *Hull* vs. *Greenhill,* 4 *Barn. & Ald.* 684, Abbott, C. J. says: " A trust, to be within the Statute of Charles, must be a simple trust for the benefit of the debtor.    The object of the statute appearing to us to be, merely to remove the technical objection arising from the interest in land being legally vested in another person, where it is so vested for the benefit of the debtor."—*See also Harris* vs. *Booker,* 4 *Bing.* 96.

*Such a trust,* says Blackstone, will descend, may be aliened, is liable to debts, *to executions on judgments,* statutes and recognisances, by express provision of the Statute of Frauds, 29 Ch. II., to forfeiture, to leases and other incumbrances, nay even to the curtesy of the husband, as if it was an estate at law.—2 *Com.* 337.

In Forth *vs.* Duke of Norfolk and others, 4 *Madd.* 266, Sir John Leach says—" A judgment creditor has at law, by the Statute of Frauds, execution against the equitable freehold estate of the debtor in the hands of his trustee, *provided the debtor has the whole beneficial interest."*

The conclusion then to which we come is, that Sims, having bought the land and *paid for it,* and there remaining nothing more for him to do, it not being a *mixed* or *divided* trust, and there being no intervening estate or limitation over, that it comes within the Statute, and that the land was vendible on execution.

It has been insisted, and with much force, that the trusts referred to in the Statute, are such only as are raised by a *conveyance,* where all could be certain as to their nature and existence.    But by reference to the 8th section of the Statute, I think that it may be plainly inferred, that the generic term *trust* used in the 10th, is not restricted to such only as are expressly created by deed or devise, but that it extends likewise to *constructive trusts,* or such as arise by implication or operation of law.

Shall it be said, that constructive trusts depend upon controverted facts, and, according to the prevalence of these facts on one side or the other, the decree in equity is moulded ?    I answer, if A buy land and pay for it with the money of B, and take the conveyance to himself, is not *this trust* liable to the same objection ? Does it not depend upon the pleadings and evidence ?    And may

it or may it not, according to circumstances, be established by a court of equity? Most assuredly. And yet no one, I believe, has ever doubted that this case would fall within the statute.

But it is further urged, that a bond for titles creates no seisin in the obligee. That a covenant to convey is one thing, and a *conveyance* quite another. But if *seisin* depends upon an actual conveyance, how, I ask, is the seisin in B, in the case of a constructive trust which I just put? I answer, moreover, that the trust being extendible under the statute of Charles, there was seisin in Sims, from the time he took the bond and paid down the purchase money—and no other conveyance was necessary. From thenceforth Sims' rights *were legal rights,* and coming fully up to the maxim of the common law, pointing out the object of executions and limiting the subjects that may be demanded by them. *Ea quæ in curia nostra rite acta sunt, debitæ executione demandari debent.*

Even under the statute of 27 Henry VIII, commonly called the Statute of Uses, we should be strongly inclined to the opinion, that the interest of Sims in this lot of land was a legal estate, and liable to all those rules to which common law estates were liable.

Perhaps it is unnecessary to express any opinion as to the [2.] validity of the deed from McWhorter to Bullard, it being admitted that Pitts was in adverse possession at the time of its execution. The statute of 32 Henry VIII, against bracery and buying of titles, and which is only in affirmance of the common law, is embraced in the digests of English statutes of force in the State of Georgia. It is not necessary that a party be in actual possession in order to make a valid deed to land; *it is sufficient if there be no adverse possession held by another;* the object of the statute being to prevent the sale of *pretended titles,* (or in other words, of lawsuits.)—4 *Bac. Abr.* 495., quoted in a note to *Schley's Digest* 194. It would seem also, that if there be two persons claiming the same land, neither of whom is in the actual possession, and the premises lying untenanted, that a deed made by either of them would not come under the doctrine of maintenance, *because there is no adverse possession. Ibid.*

I apprehend that it will be found that the doctrine has never been altered that a conveyance to a third person of lands held adversely at the time, is void as an act of maintenance.—*Coke Lit.* 214 *a. Plowd.* 88. Before a person could convey lands in the adverse possession of another, he was under the necessity of reduc-

ing his right into possession, by suit. If this be the law still, then the deed to Bullard transferred no right to him, as Pitts was, at the time, in possession under sheriff's titles, claiming the land as his own. But in this case, the plaintiff in ejectment has devised, and very properly, a double fiction, and laid a demise from both McWhorter and Bullard. And this course is sanctioned and sustained in Williams vs. Jackson, 5 *Johns.* 489, where it was decided that if a person out of possession conveys land held adversely by another, such conveyance is void, but the title remains in the grantor, upon the maxim, I suppose, *dormit aliquando jus, moritur nunquam.* And where, in an action of ejectment several demises were laid, one from the grantor and another from the grantee of such a deed, it was ruled that the plaintiff might recover, though he could not on the demise of the grantee only.

But I intend only to state the principle, and shall not undertake to discuss it.

The judgment given at the Circuit Court must, for the foregoing reasons, be reversed.