# N. W. Ford *et al. v.* A. Russell *et al.*

Where a mortgage grants a power of sale to the mortgagee, the mortgagee cannot execute that power without the aid of a court of chancery.

Where an executor was authorised by a will to raise money upon the credit of his testator's estate through *banks*, and the executor procured a loan of money from *private individuals*, and executed a deed of trust on his testator's estate to secure the payment thereof; held, that this was not such an execution of the power granted in the will as would be binding on the testator's estate.

Where power is given to raise money by *mortgage*, and a particular method of doing it is pointed out, a negative upon all other modes is clearly implied, and the mode pointed out must be strictly followed.

An executor, as such, has no power to pledge the estate of his testator for a loan of money, nor to create any lien upon it, by deed or otherwise.

The facts on which the bill in this case is founded are sufficiently set forth in the abstract and briefs of counsel, and the opinion of the chancellor.

PRENTISS, GUIO and SMEDES for defendants.

The bill in this case sets forth a partnership between the complainants, under the firm of N. & E. Ford & Co., New Orleans, and Ford, Markham & Co., Vicksburg. In the year 1836 Samuel Cole died, and made by will several persons executors, of whom only Thomas J. Cole qualified. By will the testator gave the right and power to raise money on the credit of his estate, and the power to execute liens thereon. The will is made an exhibit. The bill then sets forth the manner in which the defendant, Thomas J. Cole, as executor, became indebted to the complainants, as follows: The testator, in his life time, was indebted to one James C. Ford, in a sum the amount of which is not named in the bill. After the testator's death, the defendant, Thomas J. Cole, as executor by consent and agreement with complainants, drew bills of exchange on the complainants to pay said debt to said James C. Ford. The defendant, Thomas J. Cole, agreed to give a deed of trust on part of the property of the said testator, to

indemnify the complainants, and did so. The deed of trust is also made an exhibit. The bill then shows that complainants took up and paid, with their own money, about eleven thousand dollars of the bills of exchange drawn by defendant, Cole, upon them, which bills of exchange had been discounted by complainants, and a portion of the proceeds appropriated to the discharge of the debt due by the testator to James C. Ford. The remainder had been paid over in cash to the defendant, Thomas. The three bills of exchange taken up by complainants are made exhibits, *but not filed.*

The bill then shows that the testator in his life time bought of the state of Mississippi sixteen thousand three hundred and twenty dollars' worth of land, for the payment of which he executed his notes, with H. W. Runnels and A. Russell as sureties—that he gave a *mortgage* upon the said land and divers negroes (the same as those conveyed to the complainants by the defendant, Thomas, as executor) to the said Runnels and Russell, to secure them, and to. indemnify them for their suretyship. A copy of the *mortgage* is filed as an exhibit (No. 6.) The bill charges the solvency of the estate of the testator; charges that Russell and Runnels have paid no part of the money due the state, and are not damnified; that Runnels is dead, and Cary D. Runnels his administratrix; that Russell is treating the mortgage to him and Runnels as an absolute deed of trust, and is proceeding to sell the mortgaged property at public auction, under and by virtue of the *mortgage.* The bill charges this to be unlawful and ruinous to the complainants, inasmuch as Russell advertises to sell for ready money, and thereby will sacrifice the property, in itself sufficient to pay both debts. Bill prays injunction, and that the property be sold by order of court, and the state of Mississippi first paid, and then the complainants.

To this bill the defendants have demurred.

They take three positions:

First. That power is not given by the will, as alleged in complainants' bill, to the executor, to raise money on the testator's estate, and to execute liens thereon, to secure the payment of the money.

Second. If the power is given, as alleged in the bill, it has not

been exercised in this case, as no such lien on the estate of the testator has been made, nor the money advanced to the estate as required by will.

Third. The mortgage given to the defendant, Russell, is not a mere mortgage, but contains a power of sale, and Russell was only acting within the power conferred upon him, and the sale to be made by him would have been lawful.

If the defendants succeed in either of these positions, the injunction must be dissolved and the bill dismissed.

An inspection of the will, marked (No. 1,) will clearly disprove the allegation of the bill in relation to the power conferred on the executor, and will amply sustain the first position assumed by defendants. The fifth item of the will is the one relied on by complainants as containing the power to the executors. That item only gives the executors power to raise money on the faith of the estate *from banks,* and only gives them power to execute written liens upon the estate when the indorsers of the notes to be discounted by the banks may require it for their security. The bill does not allege the complainants to be *bankers.*

The rule in relation to powers conferred upon executors, by will, over real estate, is, that such powers must be strictly pursued. The executor has no right to go beyond the express words of the power. Vide Story's Eq. 2 vol. 323, *et infra;* 2 Starkie on Ev. 661, late ed. and note and the authorities there cited.

In the second place, admitting for the sake of argument that there was a general power given to the executor to raise money upon the faith of the estate, and to make liens accordingly, it is contended by the defendants that that power has not been exercised in this case—the money has not been advanced upon the faith and for the benefit of the estate of the testator, nor such a lien given. The bill alleges that the testator's estate was indebted to James C. Ford. How much the bill carefully avoids setting forth. To pay that debt defendant, Thomas, drew bills of exchange on the complainants, which they discounted to the amount of thirteen thousand five hundred and forty-six dollars and thirty cents, the nett proceeds whereof were applied, first to the satisfaction of the debt due James C. Ford, and *the remainder* was handed over to the defendant, Thomas. How much

that *remainder* was is not stated. But there is no allegation in the bill that it was paid to the said executor, for the benefit of the estate, to discharge the debts of the estate, or, in the language of the will and power, to promote the interests of the estate. For aught that appears, it (the remainder, which may have been nearly the whole sum) was discounted for the sole and individual benefit of the said Thomas, and was so used and appropriated by him. The bill further alleges that defendant, Thomas, paid them a certain sum, the amount not specified, in cash, and gave new bills of exchange to take up the old. The bill does not state that these new bills were for the benefit of the testator's estate, or even that they were in payment of the debt due James C. Ford, and for aught that appears, the sum of money paid the complainants in [cash was even greater than the debt due James C. Ford. An inspection of the deed of trust, No. 2, will at once satisfy the court that it is not given in accordance with the power conferred by the will, but is in the individual right of the executor. The estate cannot be bound by it. It is a fraud upon the estate, and the rights of the defendant, Russell, cannot be affected by it. Wilson *v.* Throup, 2 Cowen 195; Sinclair *v.* Jackson, 8 Cowen, 826.

Third. The defendants contend that Russell had a power to sell by virtue of the conveyance to him and Runnels. The deed to them contains the express power. They need not wait for special injury. The notes to the state, the bill shows, are due. Russel and Runnels were authorised to sell whenever they were in danger of suit, or in other words whenever the notes were due. This time had arrived, and Russell's action was within the power conferred upon him by the deed, and therefore lawful. Vide Jackson *ex dem.* Bartlett *v.* Henry, 10 Johns. Rep. 185; 2 Cowen 195; Sims *v.* Hundly, 2 Howard 896. The law is likewise positively laid down in England, Sugden on Vendors, marginal pages 357 and 358, which see.

In conclusion, then, defendants say, no such power is given by the will to mortgage or give a lien upon testator's estate, except to the securities upon such notes as executors might have to give to banks to obtain their discounts; that this is not a case of that kind; that, for aught the complainants' bill shows, the renewed

bills of exchange were not for the payment of the debt due James C. Ford by testator, but for the executor's personal advantage, and therefore he had no right to give the lien upon the testator's estate, *even if the power to do so were general,* and not limited to securities upon the notes to banks; and, thirdly they refer to the above cited cases to show Russell's right to sell, and that the circuit judge ought not to have granted the injunction. It will be observed by the court in this case, the bill charges no fraud.

HARRISON and HOLT for complainants.

The power of sale, in the mortgage to Runnells & Russell, being joint and not several, has not survived to Russell; and he has therefore no authority to execute it alone, as it is alleged in the bill he is attempting to do.

Russell, being the mortgagee, ought not to be allowed to make the sale, because deeply interested. Under such circumstances, it has been the constant practice in Virginia, and I believe in Mississippi, for the chancellor, upon application, to substitute some person who stands indifferent between the parties, as commissioner or trustee to make the sale. Chowning *v.* Cox and others, 1 Rand. 306.

Courts of law, it is admitted, treat an informal or defective execution of a power as a nullity. Courts of equity, however, act very differently. In 1 Story's Eq. 181, it is laid down that "if there be a defective execution, or attempt at execution, of a power, then equity will interpose and supply the defect—not universally, indeed, but in favor of parties for whom the person entrusted with the execution of the power is under a moral or legal obligation to provide by an execution of the power, or a *bona fide purchaser,* creditor," &c. Again: page 184—"Where the party undertakes to execute the power, but by mistake does it imperfectly, equity interposes to carry his very intentions into effect, and that too in aid of those who are peculiarly under its protective favor—*creditors, purchasers, &c.*" Page 185—"It is only necessary that the intention to execute the power should clearly appear in writing, *as if the party execute an instrument, which he could only do by virtue of the power.*"

The bare execution of the mortgage by the executor, is itself

conclusive evidence that he was acting by virtue of the power given him in the will; because without the power there given, he would have had no authority whatever to create any lien upon the estate. There has been a substantial compliance with the wishes of the testator; and the execution of the power, though not *literal*, has accomplished the intent and object of the party in creating it. It is manifest from the context of the will, that it was the desire of the testator that no part of his estate should be sold, but that the whole should be kept together, cultivated and improved by his executors until the year 1849, when it should be divided among his children. He was involved in debt. To provide for these liabilities and otherwise promote the interest of the estate, he foresaw it would be necessary to raise money upon the credit of the estate itself. He therefore gave the power to mortgage it to those who might indorse the paper of his executors that should be discounted by the banks. Complainants, though not indorsers, were accommodation acceptors of the executors. To secure them, if not within the letter, certainly was within the intention of the power. The bills they accepted were "discounted," and the proceeds applied, in part, to payment of debts due from testator to Ford, and balance paid to the executor. It is not matter of *substance* that complainants were not bankers, or that the money was not loaned by banks. The leading object of the testator is effected as fully as if the funds had been raised from the banks; and this *formal* defect in the execution of the power will be cured by the chancellor in behalf of complainants, who are *mortgagees or purchasers for a valuable consideration*, and who, in addition, should be substituted to the rights of Ford, *a creditor of testator*, whose claim their money discharged.

The objection that the bills of exchange referred to are not filed, cannot *arise on demurrer*. Defendants should have moved to dismiss the bill for that cause, which they have not done. The chancellor has a right to give time for filing exhibits, which is asked on part of complainants, should defendants make any motion upon the subject.

The CHANCELLOR.

The bill states that Samuel Cole, by his will, gave to his exe-

cutors—of whom the defendant, Thomas J. Cole, was one—power to raise money upon the credit of his estate, by making notes and discounting them through banks, and to execute liens on his estate to those who might be procured as indorsers on said notes; that the defendant, Thomas J. Cole, is the only executor who qualified, and that, acting as executor with reference to the power given under the will, he drew various bills of exchange upon the complainants, as commission merchants, which they allege were accepted, discounted and paid by them; that, for the purpose of securing them, he gave a deed of trust upon the real and personal property of his testator; that Samuel Cole, in his life time, had executed a mortgage on the same property to H. W. Runnells and A. Russell, who were his sureties upon a large debt due the state; that this mortgage gave to Runnells and Russell the power of selling the mortgaged property; that Runnells is dead, and that Russell, as surviving mortgagee, had advertised to sell under the power of sale for ready money.

The bill charges that Russell cannot legally sell the property, and that the proposed sale would be ruinous to the interests of the complainants, and prays for an injunction against the sale by Russell, and that the property may be sold by order of this court, and the proceeds marshalled between the mortgage to Russell and the deed of trust to the complainants.

To this bill there is a demurrer, and several questions are raised, which dispose themselves into the following inquiries:

First. Can the defendant, Russell, sell under the power of sale in the mortgage made to him, without the aid of a court of chancery?

Second. Supposing the power to be given in the will of Samuel Cole in the form contended for by the complainants, could it be executed by Thomas Cole without the joinder of his co-executors, they being alive and not having refused?

Third. Does the power given by the will of Samuel Cole to his executors, to raise money upon the credit of his estate *through banks*, authorise them to raise it through *private individuals?*

The first position presented, questions the right of a mortgagee to sell under a power of sale to himself in the mortgage. The complainants assume that he cannot, and in this opinion I fully

concur both upon principle and authority. A mortgagee with power of sale, is placed in a situation where his duties are in open conflict with his interest, and where the temptation to act unfairly and oppressively is too powerful to be tolerated. He is the trustee of the equity of redemption, with absolute power to dispose of it without reference to the will or interest of the mortgagor, (his *cestui que trust*.) To permit him to exercise such a power, would be to allow him to state his own account, to determine absolutely upon the amount due him, pronounce a decree of sale in his own favor, and act as his own commissioner in the execution of it. He is made the judge in his own case, and under circumstances, too, not very favorable to an impartial decision. In a case of this kind before Lord Eldon, referred to in Powell on Mortgages, editor's notes p. 9, his Lordship says:

"How can it be right that such a clause should be introduced into a deed under which the party is a trustee for himself? It must be recollected that this is a clause not to be acted upon by a middle person, who is to do his duty between the mortgagor and the *cestui que trust*, but the mortgagee is himself made the trustee to do all those acts."

In Clay *v.* Willis, 1 Barn. and Cres. 364, it was held that a deed of conveyance, with power of sale, for the security of money loaned, but having no proviso for redemption, was a mortgage with the right of equity of redemption. The same doctrine was held in the case of Wright *v.* Rose, 2 Sim. & Stu. 323. In 1 Randolph 306, the supreme court of Virginia fully sustained the grounds taken by the complainant.

The next inquiry is, Was there a proper execution of the power under the will of Samuel Cole? The language of the will by which the power is conferred is in these words:

"Now in case my executors shall jointly, at any time, deem it necessary, for the promotion of the interest of the estate, to borrow money out of any bank or banks, in such case I hereby will and bequeath the power to the said executors to execute a note or notes in their character of executors, payable in bank, which note or notes shall be binding upon my estate; and in case it shall become necessary, with a view to procure indorsers upon such notes, I further will that my executors may give liens in writing

to such indorsers, upon a sufficient portion of my estate to indemnify them."

Was the drawing of a bill of exchange, and discounting it with the complainants as commission merchants, and giving them a deed of trust upon the property of the testator, such a compliance with this power as can be sustained in equity? What constitutes a proper execution of a power, is said to depend on the substantial intention of the parties, as derived from the grant of power itself; and in furtherance of that intention, courts will usually place a liberal and equitable construction upon the instrument creating the power. See 4 Kent 318, and authorities there cited. But where a special mode of executing the power is pointed out and defined, there can be no room for construction; that mode must be strictly complied with, and especially if it is of the substance of the execution of the power. 1 Story's Equity, 187; 4 Kent's Com. 329. The particular mode indicated cannot be superseded by substituting what may be deemed its equivalent; and the reason of the rule seems to rest upon the undoubted right of the person who creates a power to define the mode of its execution, and to place upon it such checks and restrictions as he may choose. Sugden on Powers, 205–6, 220–9; 17 Vesey, 454; 3 East, 410. Thus, a power of appointment by *will* cannot be executed by *deed*, because it is said the intention of the power was that the donor should retain entire control over its execution until his death, which could not be the case if it were executed by deed. Reed *v.* Shergold, 10 Vesey, 378, 380. In this case the designation of the banks as a source of loan, was, I apprehend, not merely accidental or descriptive, but intended as a substantial part of the power. The negociation of loans through banks is known to be made at a much cheaper rate of interest, and upon terms much more favorable as to time, than those which are effected through private individuals. The testator may have been entirely willing to resort to a bank for a loan at known and established rates of interest, to preserve his property from sale, when, if the alternative had been presented him of making his paper and throwing it into market for discount, and submitting to the ruinous rate of exaction usually made by brokers and commission merchants in such cases, he would have considered the sale of

his property as much the most eligible mode of extricating his estate from debt. If the power to raise money *generally*, upon the credit of the estate, had been given by the will, there can be no doubt that the executor might have adopted whatever mode his discretion suggested. It is this latitude of power which the testator seems to have intended to guard against. Here the executor is restricted to a particular mode, and all discretion is cut off. It is certain that the executor, as such, possesses no power to pledge the estate of his testator for the loan of money, nor to create any lien upon it by deed or otherwise. Such power can only be exercised where expressly given by the will, and if it be special in its character, like all other special authority, it must be strictly pursued. In such cases, the instrument creating the power must determine for itself. Where power is given to raise money by mortgage, and a particular method of doing it is pointed out, it would seem clearly to imply a negative upon every other mode. 1 Powell on Mortgages, 66–7, 74 and note 2; 2 P. Williams, 13, 659; Mills *v.* Banks, 3 P. Williams, 5; 3 Bro. Ca. 503. The books furnish no rule of construction by which a power restricted and special in its terms, can be construed as general and discretionary under the specious notion of carrying out the intention.

But it is argued that there has been a substantial execution of the power, and that this court, in aid of the intention of the grantor, would supply any defect arising from a mere literal departure from its terms. It is true that acts done in the execution of a power, not strictly in accordance with its terms, nor variant from its general intent, may be upheld in equity. But this application of the remedial justice of courts of equity rests upon the general jurisdiction which they exercise in correcting mistakes and in reforming defective instruments so as to make them correspond with the real intention of the parties. Where that intention is obvious, courts of equity, no more than courts of law, can sanction any departure from it. It is only where the language of an instrument is ambiguous or doubtful in its application, that rules of construction are resorted to for the purpose of extracting the intention. Judge Story, in treating of the relief given in equity in cases of defective execution of powers, remarks: "In all these

cases it is to be understood that the intention and objects of the power are not defeated or put aside, but they are only informally attempted to be carried into effect. But where there is a defect of substance in the execution of the power, equity will not aid the defect." 1 Story's Equity, 187. I cannot regard the acts of the executor in this case, viz: making a bill, having it discounted with commission merchants, and giving a deed of trust to them to secure the payment thereof, as being either in conformity with the terms of the will, or as a substantial compliance with the intention of the testator.

This view of the case renders it unnecessary to notice the other questions presented upon the argument of the demurrer.

I have felt throughout this case that it may be one of hardship upon the complainants, and would have been gratified could I have been justified by the authorities in coming to a different conclusion.

The demurrer must be sustained, and the bill dismissed.