KING (THOMPSON v.). See Cases Nos. 13,-962 and 13,963.

KING v. TROSTEL. See Case No. 7,794.

---

## Case No. 7,808.

KING et al. v. TUSCUMBIA, C. & D. R. CO.

[7 Pa. Law J. 166.]

District Court, N. D. Alabama. Nov. Term, 1846.

RAILROAD MORTGAGES — RECORDING BONDS — ASSIGNMENT IN TRUST FOR CREDITORS—GRANTOR'S INTEREST — PROPERTY LIABLE TO BONDHOLDERS —EQUITY PRACTICE.

1. A railroad company, which by their charter was authorized "to borrow money, contract debts, and be contracted with upon the credit of the stock thereof, and to pledge personal or real estate for the payments of their debts," in order to secure the repayment of certain sums borrowed, gave bonds, in which they pledge "all their estate, both real and personal, their road, their stock and profits." *Held*, that these bonds were to be considered as mortgages, and governed by the laws applicable to mortgages; that as between the holders of the bonds and the railroad company the lien is not lost, if the bonds remain unrecorded, and that the same rule exists in regard to creditors or subsequent purchasers, with notice.

2. Where a railroad company had assigned its property to A. B., in trust for certain creditors, and the deed of trust had been regularly recorded, it was *held*, that a sale under an execution, on judgments obtained subsequently to the execution and recording of the trust deed, passed no title to any portion of the property so assigned.

3. The interest of a grantor in a trust deed is not such an interest as can be sold under execution. It is a mere contingent and reversionary interest and not liable to levy and sale under an execution. The case of Williams v. Jones, 2 Ala. 318, reviewed and overruled.

4. All property in the hands of a railroad company at the time when the bonds were given, as well as all property purchased with the proceeds of such bonds and in the possession of the railroad company at the time of the decree, were *held* liable to satisfy the holders of the bonds.

5. Although a court of equity in one state may decree a conveyance of land in another state, and may enforce such decree by process against the defendant; yet neither such decree, nor any conveyance under it, unless made by the person in whom the title is vested, can operate beyond the jurisdiction of the court.

6. Whether where a number of bonds are secured by a single mortgage, and a portion of the bondholders are complainants in equity, the court can compel the appearance of the rest, in order that they may participate in the benefits of a foreclosure, or be made co-defendants. Query?

The Tuscumbia, Courtland and Decatur Railroad Company borrowed in 1833 of the complainants [James King and John Ward] ninety-six thousand dollars, and gave their bonds for the repayment of the same, each in the sum of one thousand dollars, payable in the year 1848, but the interest to be paid semi-annually at the Phoenix Bank in New York. In their bonds they pledge "all their estate, both real and personal, their road, their stock, and profits," for the payment of the interest semi-annually, and for the redemption of the principal sum borrowed. At a subsequent period, the railroad company became largely indebted to the Decatur Bank, and executed to S. O. Nelson a trust deed of all their property, except one lot, to secure the payment of the debt due to that bank. The bonds to the complainants were not recorded in Alabama, but evidence was introduced to show that the Decatur Bank had, at the time of the execution of the trust deed, notice of the bonds, and of the pledge of the property therein contained. Subsequently to the execution of the trust deed, judgments were obtained against the railroad company by sundry individuals, and a portion of the property conveyed by the trust deed was sold at sheriff's sale. The trust deed was duly recorded according to the laws of Alabama. Some of the lands pledged by the railroad company lie in the state of Mississippi. There are other holders of bonds issued by the railroad company, who are not parties to this suit. The interest upon most of the bonds has not been paid since 1839, and upon none of them since 1840.

CRAWFORD, District Judge. The questions which arise in this case are the following: Can the bonds of the railroad company be considered mortgages? If they be mortgages, can the complainants foreclose against the Decatur Bank? Can they foreclose against the purchasers at sheriff's sale? Can they foreclose as to the lands which lie in the state of Mississippi? Can the court call the other bondholders before it, in order that they may participate in the benefits of a foreclosure, or be made parties defendant? These questions will each be considered and determined.

By the third section of the charter of incorporation the railroad company are authorized "to borrow money, contract debts, and be contracted with upon the credit of the stock thereof, and to pledge personal or real estate for the payment of their debts." The lien given by the company upon their real and personal property and stock is in the words of the act of incorporation, and is therefore not only legal, but effective. An instrument under seal,

creating a lien upon property, and intended as a security for the payment of money, whether it is conditional or absolute, or whatever its form, is a mortgage. The bonds issued by the company are under the seal of the corporation, contain a promise to repay borrowed money, and also give a lien upon property. Mortgages are estates holden in pledge—in dead pledge. "Mortuum vadium, a dead pledge or mortgage, is where a man borrows money of another, and grants him an estate in pledge." The legislature, in giving power to the railroad company to borrow money and give security for its repayment, use words appropriate to a mortgage. The bonds given in pursuance of the act are therefore mortgages, and must be governed by the laws which govern mortgages. Between the holders of these bonds and the railroad company, the lien created by the bond is not lost if they be not recorded; and the lien is preserved against any purchaser of the mortgaged property with notice of the lien. By an act of the legislature of Alabama, passed in 1828 (Clay's Dig. 255), it is proved that "all deeds and conveyances of personal property in trust to secure any debt or debts, shall be recorded in the office of the clerk of the county court of the county wherein the person making such deed of conveyance shall reside, within thirty days, or the same shall be void against creditors and subsequent purchasers without notice." And if the conveyance be of real estate, it must be recorded in sixty days. The supreme court of Alabama has decided that this act includes mortgages as well as trust deeds. Magee v. Carpenter, 4 Ala. 469. It will thus be seen that by the express words of the act, a trust deed and also a mortgage unrecorded is valid against a creditor or subsequent purchaser with notice. The Decatur Bank I consider a purchaser with a notice of the prior lien of the complainants. The testimony of Benjamin Sherrod, James Fenner, S. O. Nelson, and the circumstances of the case, prove to my mind that the bank had notice of the lien created in favor of the holders of the bonds at the time of the execution of the deed of trust for its benefit. The complainants, therefore, as holders of the bonds, have a right against the bank to foreclose the mortgages, and to have the mortgaged property applied to the payment of the interest of their debt, in pursuance of the contract made by the railroad company, and set forth in their bonds.

Have they this right in regard to the property purchased at sheriff's sale by Gorman, Pierce, and others? At the time of the sale of this property by the sheriff, it had been conveyed by the railroad company to S. O. Nelson, in trust to secure a large debt due from it to the Decatur Bank, and no estate remained in the railroad company, except an equity of redemption, or an equitable interest created by the trust deed. The legal estate being in Nelson, it is not possible that any other than an equitable interest should remain in the railroad company. By a statute of the state of Alabama it is provided that "the equitable title or claim to land or other real estate, shall hereafter be liable to the payment of debts by suit in chancery, and not otherwise." Clay's Dig. 350. This is the law independently of any statutory provision. In New York it has been holden that a resulting trust is a legal estate, or that it will be so regarded, so far as to prevent the trustee from recovering the possession against the cestui que trust. The supreme court of the United States, in the case of Watkins v. Hollman, 16 Pet. [41 U. S.] 57, say: "This doctrine (that a resulting trust should be considered a legal estate) seems to have been sanctioned to some extent in New York in the cases of Foot v. Colvin, 3 Johns. 216; Jackson v. Matsdorf, 11 Johns. 91; and Jackson v. Morse, 16 Johns. 197. These decisions may have been influenced somewhat by the statute concerning uses in that state, which subjects the estate of the cestui que trust to execution." The court also say that this doctrine was countenanced by Lord Mansfield, and that "it is known that that great judge had a strong leaning to the principles of equity in trials at common law." This equitable doctrine in a court of law was overruled in the case of Doe v. Staple, 2 Term R. 684. Lord Kenyon says: "Is it possible for a court of law to enter into the discussion of such nice points of equity? We have no such authority. Sitting in this court, we must look to the record, and see whether a legal title is conveyed to the party claiming under these instruments." In the case of Doe v. Wroot, 5 East, 132, Lord Ellenborough said: "We can only look to the legal estate, and that is clearly not in the devisees, but in the heir of the surrenderer; and if the devisees have an equitable interest, they must claim it elsewhere, and not in a court of law. For, as to the doctrine that the legal estate cannot be set up at law by a trustee against his cestui que trust, that has been long repudiated." After quoting the above authority, the supreme court of the United States add: "And this is the settled doctrine in England on this subject, and with few exceptions in this country." In the states where no courts of chancery are established, courts of law, in giving relief, of necessity, trench upon an equitable jurisdiction.

The supreme court of Alabama have followed the decisions in New York, and have thus far, according to the above extract from the opinion of the supreme court of the United States in the case of Watkins v. Hollman, departed from the common law, which is in this state, when unaltered by statute, the law of the land. The statute of this state, which authorized the sale of an equitable interest in lands, was repealed in 1820, [Toulmin, Laws of Ala. p. 317, § 2,] and it was provided by statute, that the equitable title to lands shall not be subjected to the payment of debts except by suit in chancery. In the case of Williams v. Jones, 2 Ala. 319,

the supreme court of this state, say: "If this question (whether the equitable interest of the maker of a deed of trust could be sold under execution) was presented to this court for the first time, considering the amount of property thus held, and the embarrassing effects which must result from a sale under such circumstances, we should hesitate long before we gave it our sanction. The most obvious effects are the sacrifice which must attend the sales of property to which only an imperfect title can be conveyed by the sheriff, the value of which it may be difficult to ascertain, and the danger to which the mortgagee or the person beneficially interested is exposed by the property being sold to different persons, and carried to different parts of the state, not to mention the difficulties which would attend a redemption of the property from the same causes." The evils of the practice which prevails in the state courts are thus forcibly depicted by the supreme court, and are sufficient to prevent this court from pursuing a course of decision which leads to such embarrassing results, and more especially as I believe it to be in opposition to the common law, and also to a statute of the state. But the decisions of the supreme court of Alabama in the cases of McGregor v. Hall [3 Stew. & P. 397] and of Perkins v. Mayfield, 5 Port. [Ala.] 182, referred to by the supreme court as authorizing, or rather constraining the decision, that the interest of the maker of a trust deed can be sold under an execution, do not, according to my view of them, warrant the conclusion to which the court came in the case of Williams v. Jones. In the first of those cases the court decided that the interest of a mortgagor was a legal estate, and, as such, could be sold under an execution. The interest of a mortgagor and a grantor in a trust deed in the property mortgaged in the one case and conveyed in the other, are very dissimilar, and the difference between them is clearly pointed out by the chancellor of Mississippi in 1 Freem. Ch. [Miss.] 109. The chancellor says: "The interest of a grantor in a deed of trust is not analogous to the interest of a mortgagor, and is not the subject of lien or execution at law. Here was an absolute conveyance in trust for the payment of debts. It bears no analogy to a mortgage. See 1 Pow. Mortg. p. 10, note. The grantor has but a contingent, reversionary interest. The trustee holds the land in trust, first for the payment of debts, and, secondly, for the benefit of the grantor, if anything should be left after the payment of the debts. See Den v. Dodds, 1 Johns. Cas. 160. This is not such an interest in the grantor as is the subject of levy and sale at common law. A judgment at law is not a lien upon equitable interests in land. 1 Johns. Ch. 52, 17 Johns. 350. The interest of a cestui que trust in real estate cannot be sold on an execution, unless when the trustee holds the title as a naked, simple trust, and the whole beneficial interest is in the cestui que trust. Ontario Bank v. Root, 3 Paige, 478.

In the case of Perkins v. Mayfield the sole question, as stated by the court, which was then before it, was whether "a mere equity, unaccompanied by possession, can be reached by execution." This question was decided in the negative; if anything more was decided by the court, it was extrajudicial, and not binding upon that or any other court. But in looking into the case, I find that all the judicial decisions cited by the court sustain the doctrine that an equitable interest cannot be sold under an execution, and the court, although they say several times that they do not mean to overrule the decision in the case of M'Gregor v. Hall [supra], yet certainly give to it no confirmation; and the adjudications referred to by them clearly show that it was founded in error. In the case of Williams v. Jones, 2 Ala. 318, the court says: "In the case of Perkins v. Mayfield, 5 Port. [Ala.] 182, the precise question here raised was determined by this court, in which it was held that a mere equity, unaccompanied by the possession of the property, could not be sold by execution, but that the equity of the maker of a deed of trust, accompanied by possession, could be thus sold." The court in this statement has clearly fallen into an error. In the case of Perkins v. Mayfield the question was whether the interest of a mortgagor could be sold under an execution; and in the case of Williams v. Jones the question was whether the interest of the grantor in a trust deed could be sold under an execution. It is but necessary to refer to the opinion of the chancellor of Mississippi, already quoted, and to the authorities referred to by him, to show the great difference between the interests of a mortgagor and the interests of a grantor in a trust deed. They are totally dissimilar. Some courts hold that the interest of a mortgagor is a legal estate, and liable to be sold under an execution. No court except the supreme court of Alabama, so far as I have been able to ascertain, has holden that the interest of a grantor in a trust deed can be sold under an execution. That interest is contingent and reversionary, and of course not liable to a levy and sale under an execution. In fact it would be difficult to find it, for it has no present existence.

From a statement of the facts of the case of Perkins v. Mayfield, made by the reporter, it appears that the slaves levied upon had been mortgaged by the defendant in execution to Perkins and Ellott, to secure them against a contingent liability, with a power of sale in case of their liability becoming absolute. The power of sale did not convert the instrument from a mortgage into a trust deed. It was, notwithstanding the power of sale, a mortgage, and a sale made by the mortgagee, without the intervention of a court of equity, independently of any statutory provisions, is void. See 1 Rand. [Va.]

30G; 3 Leigh, 654; 1 Freem. Ch. (Miss.) 42. So that this case was not analogous to the case of Williams v. Jones, and did not justify the court in holding that the interest of the maker of a trust deed could be sold under an execution. The first decision by the supreme court of Alabama that such interest could be sold under an execution was made in that case, and it was also in that case that they lament the evils which flow from such a course of decision. It may be remarked, too, that the court referred to no decision, except their own, to sustain the position that the interest of the grantor in a trust deed could be sold under execution. But it has been directly decided by the supreme court of the United States that the interest of a mortgagor in the mortgaged premises, and a fortiori, that the interest of a grantor in a deed of trust, cannot be sold under an execution. In the case of Van Ness v. Hyatt, 13 Pet. [38 U. S.] 294, they say: "The only interest which the appellant can claim in the property in question is derived from the levy by the officer under his execution, and the purchase made by him at the sale under that execution, of whatever right, title, and claim Shields had in the property. Now it must be borne in mind that not only before the sale, but even before the levy, Shields had mortgaged the lot to Franks, and consequently his right was only an equity of redemption. Was this such a right or interest as that a fieri facias could be levied upon it? The principle of the common law undoubtedly is that no property but that in which the debtor has a legal title is liable to be taken by execution, and accordingly it is well settled in the English courts that an equitable interest is not liable to an execution." And the court cite as authorities, 1 Ves. Jr. 431; 8 East, 4C7; and 5 Bos. & P. 461. This decision of the supreme court of the United States will, of course, govern this court, and under its influence it must decide that after the execution of the trust deed by the railroad company for the purpose of securing the Decatur Bank, no estate remained in the railroad company which could be sold under execution, and that Gorman and Pierce and others, by their purchase at sheriff's sale of a portion of the property, acquired no title to it, and that their claims present no obstacle to the foreclosure, which the complainants seek. The property which the railroad company had in its possession at the date of their bonds or mortgages, and also other property acquired with, or received in exchange for it, and I think also the property purchased with the money derived from the sale of the bonds now in possession of the railroad company, are liable to satisfy the demands of the complainants. In the case of Oliver v. Pratt, 3 How. [44 U. S.] 333, the supreme court hold that, "in cases of trust, where the trustee has violated his trust by an illegal conversion of the trust property, the cestui que trust has a right to follow the property into whosesoever hands he may find it, not being a bona fide purchaser for a valuable consideration, without notice." "When a trustee has, in violation of his trust, invested the trust property, the cestui que trust has his option either to hold the substituted property liable to the original trust, or to hold the trustee himself liable for the breach of trust."

Can this court decree a foreclosure and sale of the land upon which the complainants allege they have a lien, but which lies in the state of Mississippi? This quesion has been fully answered by the supreme court of the United States in the case of Watkins v. Hollman, 16 Pet. [41 U. S.] 25. The supreme court say: "A court of chancery, acting in personam, may well decree a conveyance of land in any other state, and may enforce their decree by process against the defendant. But neither the decree itself, nor any conveyance under it, except by the person in whom the title is vested, can operate beyond the jurisdiction of the court." The decision of the supreme court is decisive of the question now before this court. This court might, in a proper case, compel the railroad company to convey to the complainants, but it can make no decree which shall operate directly upon the land. It consequently cannot decree a foreclosure, nor a sale of the land lying in Mississippi, in default of payment of the interest now due to the complainants. I am not aware of any process by which the other bond holders can be called before the court, and viewing the complainants as mortgagees, I do not deem it absolutely necessary that the other mortgagees should be before the court, in order to a foreclosure. Whatever rights other mortgagees, holding mortgages of the same date, may have, will be protected by law, notwithstanding the foreclosure.

It is, according to the foregoing opinion, ordered, adjudged, and decreed, that all the real and personal estate of the railroad company, their road, the profits and stock belonging to the said railroad company on the first day of October, 1833, the date of the said bonds or mortgages, and the property which has been acquired with or in lieu of the said real and personal property, road, profits, and stock, and which are now in the possession of the said railroad company, or in the possession of the other defendants with notice of the lien of the said complainants, except the lands which lie in the state of Mississippi, be, and the same are hereby, declared liable to pay the interest on the bonds holden by the complainants, and ultimately for the redemption of the said bonds; and it is ordered that it be referred to the master to ascertain what property is thus liable, and also to ascertain the amount of interest now due on said bonds, and to report to this court in order to a final de-

cree; and that the master have power to require the production of books and papers necessary to ascertain the property of the said railroad company, and to examine witnesses touching the same, and also concerning any matter referred.